**MAREMONT CORPORATION, Plaintiff-Appellant,**

v.

**FEDERAL TRADE COMMISSION, Paul Rand Dixon, Philip Elman, Everette MacIntyre, Mary Gardiner Jones, and James M. Nicholson, Defendants-Appellees.**

No. 18299.

United States Court of Appeals, Seventh Circuit.

Sept. 3, 1970.

Rehearing Denied Sept. 22, 1970.

Earl E. Pollock, Jean Allard, Chicago, Ill., for appellant.

Morton Hollander, Chief, Appellate Section, U. S. Department of Justice, Washington, D. C., Gerald Harwood, Federal Trade Commission, Washington, D. C., William D. Ruckelshaus, Asst. Atty. Gen., Thomas A. Foran, U. S. Atty., Alan S. Rosenthal, Robert E. Kopp, Attys., Department of Justice, Washington, D. C., of counsel, for appellees.

Before FAIRCHILD, KERNER and PELL, Circuit Judges.

KERNER, Circuit Judge.

Plaintiff filed suit in district court against the Federal Trade Commission and its Commissioners seeking declaratory and injunctive relief, claiming that the Commission was violating its constitutional and statutory rights. The district court dismissed the complaint and the plaintiff appealed. Pending appeal, the district court entered an order restraining the defendants from holding any further proceedings.

The Federal Trade Commission, in July of 1968, issued a complaint against Maremont Corporation charging that various acquisitions by the company violated Section 7 of the Clayton Act, 15 U.S.C. § 18, and Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45. The Commission's staff acquired various information from third parties concerning the conduct of their business. The third parties sought to have this information kept *in camera*. In response the hearing examiner held that the information was to be disclosed to Maremont's independent counsel but that the contents were not to be revealed to Maremont's house counsel or other employees. This order was modified at the request of Maremont to allow disclosure to certain named employees including Maremont's economist and house counsel of data which reflects "methodology used in compiling statistics * *" and certain other information regarding sales to warehouse distributors and sales to Arvin Industries, Inc. Nevertheless, Maremont was still not satisfied with the modification and sought an interlocutory appeal which the Commission denied:

> The third-party data in issue consists of confidential business information which the third parties would not customarily make public. In this preliminary stage, the examiner was faced with the question whether the need for respondent's four employees to know this sensitive information outweighed the third parties' need for protection. In making his determination, the examiner made it clear on the record that this was not a final ruling but was an interim decision. Specifically, he suggested to respondent's counsel that he consult with complaint counsel or the third parties to resolve any difficulties in the comprehension or interpretation of the data. If difficulties could not be resolved, the examiner's order of October 21, 1968, provides for further relief upon such showing by respondent. As pointed out in the examiner's order of November 21, 1968, respondent has failed to show that any effort has been made to establish the need for access to the data by respondent's four employees.

The fact that the examiner's rulings were not intended to foreclose this matter is further illustrated by his November 21, 1968, ruling in which he expressly provided for the disclosure to the four named employees of respondent, of any data, information or documents supplied by complaint counsel which reflect the methodology used in compiling statistics as to sales or in making adjustments in reported sales figures by the third parties.

In our interlocutory opinion in the *Koppers* case [1], we reiterated our position that the hearing examiner has authority to create protective provisions based on the facts and circumstances of each case. The fact that the examiner has denied the third parties' request for *in camera* treatment and has, in fact, modified his original position on the third-party data, establishes that in this posture of the case, the examiner's rulings were on an interim basis in an attempt to reach an equitable decision, and that such rulings are subject to further modification.

1. Koppers Company, Inc., Docket No. 8755, November 1, 1968.

In addition, in response to an industry-wide survey made by the Commission, various third parties gave the Commission information on sales of various product lines and sought to have the information kept *in camera*. The hearing examiner ruled that sales information of companies which did not object to disclosure was to be made available to independent counsel, house counsel and a consulting economist. As to information from companies opposed to disclosure, the hearing examiner ruled that there was to be disclosure to independent counsel and the economist of information as to the five product lines on which complaint counsel intends to introduce evidence. All other information is denied subject to exceptions upon request as the proceedings progress.

Maremont also filed a request for further discovery including answers to various interrogatories regarding statistics for individual companies. The hearing examiner denied the motion since the information to be used by the Commission's staff in the case either had been disclosed or was being made available. Again, Maremont sought an interlocutory appeal. The Commission denied the interlocutory appeal as to the denial of sales figures and discovery motion because Maremont had already obtained "substantial discovery" and the examiner agreed to make more information available upon showing of necessity.

In ordering the hearings to commence on November 10, 1969, the hearing examiner over the objection of Maremont held that the hearings on the Commission's evidence would be held in Washington, D. C., and not in Chicago, Illinois, because in considering the inconvenience of both parties, the inconvenience to the Commission's staff during the presentation of its case far outweighs the inconvenience to Maremont. The examiner agreed to reconsider its decision when and if Maremont presents its evidence.

On October 23, 1969, Maremont filed a motion to dismiss or in the alternative for a hearing in regard to *ex parte* communications between Steven Nelson, a staff economist, and the Commission. The motion was denied by the examiner. Plaintiff charges that after the filing of the Commission's complaint, Mr. Nelson has been "frequently consulted by the Commission * * * regarding factual background and policy in the automotive parts industry." Attached to the Commission's motion to dismiss in the district court is the affidavit of Steven Nelson denying plaintiff's allegations.

Maremont Corporation on November 3, 1970, filed suit in the district court to review the various orders of the hearing examiner and the Commission.

## PRODUCTION OF EVIDENCE

Plaintiff claims that the restrictions on the disclosure of evidence to house counsel and in some cases to independent counsel amount to a denial of counsel and a denial of effective assistance of counsel. Further, plaintiff alleges that there has been a suppression of exculpatory and material evidence. The threshold question is whether plaintiff must exhaust its administrative remedies instead of filing suit in the district court. We hold the answer is controlled by the underlying philosophy of the Supreme Court's opinion in Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638 (1938), where the Court held that jurisdictional questions which are really determined by the facts of the case must first be decided by the agency which has been charged with enforcement. We do not think the answer changes when a plaintiff attempts to characterize its claim as a violation of constitutional rights. While here it may seem that procedural questions involving the discovery of evidence do not turn on substantive factual considerations, we think that the factual and legal questions are commingled. *Cf.* Vapor Blast Manufacturing Co. v. Madden, 280 F.2d 205 (7th Cir. 1960). There is no necessity to produce confidential evidence on issues which may never appear during the hearings. The district court would have no frame of reference in which to decide the relevancy to the plaintiff of any information supplied to the Commission by third parties prior to the introduction of all the evidence against the plaintiff. The facts in this case are different from those in Elmo Division of Drive-X Company v. Dixon, 121 U.S.App.D.C. 113, 348 F.2d 342 (1965), where the court held that the district court had jurisdiction. In *Elmo* the court was concerned with whether the Commission should proceed by reopening a consent decree or by filing a new complaint. The court in *Elmo* was not presented with issues involving the reliability of "the Commission's complaint procedure * * * as a fact-finding mechanism * * *." 348 F.2d at 344. Here plaintiff is complaining that the results of the hearing

will not reflect the true situation because it is being deprived of relevant evidence. In essence, plaintiff's attack is on the Commission's fact-finding procedures.

Further, it is evident from the examiner's ruling and the Commission's denial of interlocutory appeal that the decisions are not final but rather will be reconsidered, as evidence against the plaintiff unfolds. If the hearing examiner decides to give all the information to plaintiff and allows the plaintiff further discovery, all the issues raised by the plaintiff will be moot.

■ Plaintiff relies heavily on dictum in Balanyi v. Local 1031, International Brotherhood of Electrical Workers, AFL-CIO, 374 F.2d 723, 726 (7th Cir. 1967), to the effect that "district courts might have jurisdiction to review Board action where there is a violation of constitutional rights * * *." Such language must certainly be interpreted in the context of *Balanyi* where the court was concerned with final agency action—the General Counsel of N. L. R. B.'s refusal to issue an unfair labor practice complaint and the inability of the party to raise the claim at any future date. *Cf.* Leedom v. Kyne, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958). Here, however, any constitutional claim that may exist at the completion of the proceedings can be raised in the court of appeals when the Commission seeks enforcement of its order. We see no reason why this remedy is inadequate.

## EX PARTE COMMUNICATION

■ Relying heavily on Amos Treat & Co., Inc. v. S. E. C., 113 U.S.App.D.C. 100, 306 F.2d 260 (1962), plaintiff claims that the district court has jurisdiction to determine whether there has been a commingling of the functions of prosecution and adjudication. In response to the bare allegation in plaintiff's complaint, the Commission attached to its motion to dismiss the affidavit of Steven Nelson. Mr. Nelson states in his affidavit that he has

had no communication with the hearing examiner or the Commission regarding Maremont Corporation since the issuance of the complaint. Further, as to any other discussion with the Commission in regard to the automotive parts industry, he states that as to Avnet, Inc., he "participated in the recommendation that the complaint issue and consultations incidental thereto." After the complaint against Avnet, Inc., issued, Nelson states that he has had no further communication with the Commission in respect to said complaint or the industry in general. In *Amos Treat*, the allegation was that one of the Commissioners, prior to becoming a Commissioner, supervised the investigation as part of the staff and that upon his elevation to Commissioner, he was one of three who voted for the issuance of the complaint. The decision in that case did not depend on actual considerations as to bias or prejudice but rather was founded on the premise that "the investigative as well as the prosecuting arm of the agency must be kept separate from the decisional function." 306 F.2d at 265. *Amos Treat* was distinguished in S. E. C. v. R. A. Holman & Co., 116 U.S.App. D.C. 279, 323 F.2d 284 (1963), because in *Holman* the Commissioner had not participated in review of the registration application involved in the adjudication. Here we have no facts at all showing that one of the Commissioners participated in both the investigation and adjudication. Rather, one of the staff has presented information resulting in a complaint involving the same industry and possibly the same practices. Such facts do not constitute a violation of the doctrine of separation of functions. At most the charge is that the Commissioners are prejudiced or biased because of such contacts. Such an allegation involves questions of fact and is best resolved in the court of appeals when the final agency action is challenged. Jaffe, Judicial Control of Administrative Action, 441 (1965); Davis, 3 Administrative Law Treatise, § 20.05 at 29 (1965 Supp.).

## VENUE

Plaintiff also seeks to review the hearing examiner's decision to hold the prosecution hearings in Washington, D. C., instead of Chicago, Illinois. In Eastern Utilities Associates v. S. E. C., 162 F.2d 385 (1st Cir. 1947), the court held that a court of appeals had no jurisdiction to review an order setting the place for hearing under the Administrative Procedure Act, 5 U.S.C. § 554, because it was "merely preliminary or procedural * * *," 162 F.2d at 386, in nature. Professor Jaffe criticizes this opinion because such an order can only be effectively ruled on prior to the hearings and not after they are completed. Jaffe, Judicial Control of Administrative Action, 429–30 (1965). While we agree that a court of appeals can do nothing as to proper venue once the hearings have been held, we do not think that every litigant before an agency who is unhappy with the selected place for the hearings should be allowed to hold up the hearings and contest the issue in court. Davis, 3 Treatise on Administrative Law, § 20.05 at 86 (1958). Section 5(b) of the Administrative Procedure Act, 5 U.S.C. § 554(b), provides: "In fixing the time and place for hearings, due regard shall be had for the convenience and necessity of the parties or their representatives." "Parties" as used in the statute refers to both sides. Burnham Trucking Co. v. United States, 216 F.Supp. 561 (D.Mass.1963). The hearing examiner stated the following:

> The only remaining question is that of the place of hearing. Complaint counsel have requested that all hearings be held in Washington, D. C., because of the necessity of having their economist and other staff members available for consultation, and because of the vast number of documents and files involved. Complaint counsel assert that Washington will be a convenient location for their witnesses. Respondent requests that all hearings be held in Chicago because its officials and attorneys are located there, and because that will be more convenient for the *Government's* witnesses.

> \* \* \* \* \* \*

> In the considered judgment of the examiner hearings will proceed with far more expedition, and will cause much less overall inconvenience if they are held in Washington, D. C. There is no rule, of which the examiner is aware, which requires that only respondent's convenience must be considered.

> \* \* \* \* \* \*

> The examiner is not unmindful that there will be some inconvenience to respondent and its counsel if hearings are scheduled in Washington. However, it will be vastly more inconvenient to hold hearings in Chicago for complaint counsel, which have a staggering burden to maintain in view of the vast scope and complexity of the issues presented for litigation, and the numbers of witnesses and documents involved. While it is the examiner's present intention to schedule all hearings in Washington, should it become necessary to declare a recess at the end of the Government's case-in-chief, the examiner will give further consideration to a request from respondent as to the necessity for setting defense hearings in Chicago.

Plaintiff has failed to make any allegation from which we may conclude that the hearing examiner has acted arbitrarily and capriciously to the point of ignoring plaintiff's rights. Rather, the hearing examiner has weighed the considerations on both sides and decided that Washington, D. C., is a convenient place for the hearings at least until the close of the government's evidence. Under such circumstances, we conclude that the district court did not have jurisdiction to review the examiner's order.

For the foregoing reasons, the decision of the district court is affirmed.

Affirmed.