**EASTERN BAND OF CHEROKEE INDIANS, Appellant,**

v.

**Raymond J. DONOVAN, Secy. of Dept. of Labor; David T. Copenhafer, Acting Dir., Office of Special Targeted Programs, DOL; William J. Kacvinsky, Dir., Bur. of Apprenticeship Training; Herbert Fellman, Div. Chief, Indian Native American Programs and United States Department of Labor, Appellees.**

No. 83–1416.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 7, 1983.

Decided July 17, 1984.

154

Ben Oshel Bridgers, Sylva, N.C. (Holt, Haire, Bridgers & Bryant, P.A., Sylva, N.C., on brief), for appellant.

Kenneth D. Bell, Winston Salem, N.C. (Charles R. Brewer, U.S. Atty., Max O. Cogburn, Jr., Asst. U.S. Atty., Asheville, N.C., on brief), for appellees.

Before WINTER, Chief Judge, MURNA-GHAN and CHAPMAN, Circuit Judges.

CHAPMAN, Circuit Judge:

This controversy arises from a dispute between the Eastern Band of Cherokee Indians (Tribe), a recipient of federal funds under the Comprehensive Employment and Training Act of 1973 (CETA) as amended, 29 U.S.C. § 801 *et seq.* (1978)[1] (CETA or the Act) and the Department of Labor of the United States (DOL or the Department), concerning the interpretation of an agreement between the Tribe and DOL relative to the repayment of disallowed grant costs. The Tribe appeals the decision of the district court which concluded the Tribe had failed to exhaust its administrative remedies and dismissed the action for lack of subject matter jurisdiction. Finding that the Tribe failed to exhaust the Act's administrative remedies, that judicial review of this CETA dispute is by law placed with the Court of Appeals for the Fourth Circuit only after administrative procedures have been exhausted, and that the Tribe's claims do not rise to the level of a constitutional violation, we affirm.

## I

The Tribe is a federally recognized Native American Indian Tribe which has qualified as a prime sponsor under CETA and as such has received funds under the CETA program since 1974. The defendants include DOL as well as employees and officers of DOL who entered a written agreement with the Tribe.[2] All CETA prime sponsors are subject to periodic audits to assure that federal funds are expended in a manner consistent with the Act, Regulations, and other applicable standards. On September 11 and September 21, 1981, a grant officer for DOL issued final determination letters to the Tribe, notifying it that

audits revealed $53,534.69 in improper expenditures for fiscal years 1974–1976. The Tribe did not challenge the dollar amount of its liability, and thus did not request a hearing to review any part of the grant officer's final determination. See 20 C.F.R. 676.88(f). Having conceded that it owed the government $53,534.69, the Tribe entered into an agreement (stipulation) with DOL for the Tribe's repayment of the disallowed costs. The stipulation provided that the Tribe would pay, out of non-grant funds, certain salaries and provide certain services totalling $53,534.69. The stipulation also stated that "The Grantee and the Department further agree that payment consistent with this stipulation is full final and complete settlement of the debt of $53,534.69 .... This agreement shall be incorporated in full into the annual plan subpart of the Grantee's Fiscal Year 1982 Annual Plan." When implementation of this stipulation began during the subsequent grant period, DOL requested that the Tribe "submit a modification to your Fiscal Year 1982 Comprehensive Employment and Training (CETA) grant ... deobligating the amount of $53,534.69" to reflect the disallowed CETA funds and prevent the Tribe from repaying the debt with CETA money. The Tribe objected to the reduction of its grant, and on May 26, 1982 requested a hearing before an administrative law judge "concerning the final determination of [the] audit."

By letter dated June 16, 1982 DOL informed the Tribe that, "while we consider [the Tribe's] appeal [of the September 1981 final determination] barred by the stipulation and untimely under the provisions of 20 C.F.R. § 676.88(f), you are, of course, free to pursue whatever procedures and remedies may be available under the CETA

---

1. Repealed by Act of Oct. 13, 1982, Pub.L. No. 97–300, Title I, § 184(a)(1), 96 Stat. 1357.

2. Defendant Raymond J. Donovan is the Secretary of Labor (Secretary), the chief executive officer of the Department of Labor. Defendants David T. Copenhafer, the Acting Director, Office of Special Targeted Programs and William J. Kacvinsky, Director, Bureau of Apprenticeship

Training, are employees and officers of the Department of Labor who executed a written agreement with the plaintiff on behalf of the Department of Labor on December 9, 1981. Defendant Herbert Fellman is the Division Chief of Indian and Native American Programs for the Department of Labor.

regulations governing complaints, investigations, and sanctions at 20 C.F.R. Part 676 Subpart F... A copy of these recently published regulations is enclosed for your convenience." The letter also suggested that the Tribe promptly execute the appropriate modifications to its 1982 CETA grant to expedite DOL's processing of the Tribe's applications for certain subsequent funds to be used in connection with the Tribe's summer youth program.

After receiving DOL's letter, the tribe abandoned its request for a hearing before an administrative law judge. On July 7, 1982, the Tribe consented to the modification of its grant on the condition that its consent would not prejudice its right to contest the legality of the actions taken by DOL. On July 15, 1982 DOL approved the Tribe's request for funds to be used in its summer youth program.

Rather than present this dispute through the Act's administrative complaint system, the Tribe brought this action in district court alleging breach of contract, improper coercion, and denial of due process. The Tribe sought an order declaring that the written agreement constituted a full and fair settlement of the Tribe's debt to the Department, and that the Tribe should not be required to make any payment to DOL except to pay for the salaries and services noted in the agreement. The Tribe also demanded the reinstatement by DOL of $53,534.69 to the Tribe's current CETA budget. The Tribe sought to invoke the district court's jurisdiction under 28 U.S.C. §§ 1331 and 1362, asserting the controversy arose under the laws of the United States, including the Comprehensive Employment and Training Act of 1973, as amended, 29 U.S.C. § 801, *et seq.* The district court dismissed the Tribe's suit for lack of jurisdiction because the Tribe had failed to exhaust its administrative remedies. The court stated:

> [t]he case at bar is more than a contract case between the Secretary and the Tribe. It involves the amount of CETA

funds the Tribe as prime sponsor is to receive and whether the Tribe has repaid the amount disclosed by the audit. In the event the Tribe is not satisfied with the Secretary's ruling it may then proceed in the Court of Appeals for the Fourth Circuit as provided by § 107, 29 U.S.C.A. § 817.

## II

■ It is a "long settled rule of judicial administration that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Myers v. Bethlehem Corp.*, 303 U.S. 41, 50–51, 58 S.Ct. 459, 463, 82 L.Ed. 638 (1938). Exhaustion is generally required as a matter of preventing premature interference with agency processes, to afford the parties and the courts the benefits of agency experience and expertise, to compile a record which is adequate for judicial review and to allow the agency to function efficiently and have an opportunity to correct its own errors. *Weinberger v. Salfi*, 422 U.S. 749, 765, 95 S.Ct. 2457, 2466, 45 L.Ed.2d 522 (1975).

CETA provides for administrative remedies when violations of its provisions occur. See 29 U.S.C. § 816 (1978). Basically, CETA provides a multi-tiered system for the resolution of grievances under the Act. At the local level CETA requires that each prime sponsor establish grievance procedures through which "participants, subgrantees, contractors, and other interested persons" in the program may have complaints expeditiously resolved. 29 U.S.C. § 816(a)(1) (1978). When a complainant has failed to resolve the grievance under this procedure, he may then file a complaint at the federal level with the Secretary of Labor. 29 U.S.C. § 816(b) (1978). Complaints are then investigated, and initial and final determinations are made by a grant officer. If unsatisfied with the final determination, a complainant may, within ten days of receipt of the final determina-

tion, request a hearing before an ALJ. 20 C.F.R. § 676.88(f). The ALJ's decision becomes the final decision of the Secretary unless the Secretary modifies or vacates the decision within 30 days after it is served. 20 C.F.R. § 676.91(f). Judicial review of the final decision of the Secretary is available in the U.S. Court of Appeals. 29 U.S.C. § 817(a).

Although these specific statutory and regulatory procedures appear on their face to be designed for the resolution of complaints against recipients of CETA funds, they have been held to preclude jurisdiction in district court of claims against the Secretary as well. *CETA Workers Organizing Committee v. City of New York,* 617 F.2d 926, 934–36 (2d Cir.1980); *Consortium of Community-Based Organizations v. Donovan,* 530 F.Supp. 520, 526–36 (E.D.Cal. 1982); *Adams v. City of Chicago,* 491 F.Supp. 1257 (N.D.Ill.1980); *Serghini v. City of Richmond,* 426 F.Supp. 326 (E.D. Va.1977). In *CETA Workers,* participants in the Public Service Employment component of CETA brought suit against prime sponsors and various city, state, and federal officials charged with the program's administration, including the United States Secretary of Labor and a Regional Administrator for the Labor Department. The plaintiffs' principal claims were that the local defendants had failed to provide job training and services required by the Act, and that the federal defendants had failed to monitor a prime sponsor and enforce certain elements of CETA. The Second Circuit affirmed the district court's dismissal of the claims against the federal defendants for lack of subject matter jurisdiction. The court held, *inter alia,* that the Act does not expressly or impliedly authorize a private right of action against the Secretary of DOL and his Regional Director by participants alleging failures to monitor a prime sponsor's CETA program and ensure enforcement of applicable law. The court found the provision for judicial review in the Court of Appeals, 29 U.S.C. § 817, to be exclusive, stating:

The first question, then is whether the provision of CETA permitting appellate court review of the Secretary's action (or inaction) on grievances against prime sponsors and subrecipients, § 107, 29 U.S.C. § 817, precludes direct review in district court. It may be true, as appellants suggest, that there is no administrative procedure to bring complaints against the Department of Labor itself and that § 107 does not explicitly preclude any other version of judicial review. But this also does not necessarily mean that the review section is nonpreclusive as to the review sought by appellants here. To be sure, the § 106 grievance procedure, as we have already discussed, relates only to grievances against (or by) prime sponsors and subrecipients. But it seems clear from the language of § 107 that Congress intended judicial review to occur in the court of appeals *after* the Secretary's action upon such grievances, as the exclusive judicial method of monitoring the federal agency's own enforcement of the Act vis-a-vis the prime sponsors or subrecipients (emphasis in original).

Id., 617 F.2d at 935–936.

The Act's provision for judicial review in the Court of Appeals *after* the grievance procedures have been exhausted is equally applicable in this case involving DOL's modification of the Tribe's 1982 plan and withholding of subsequent CETA funds. This controversy over CETA funding seems particularly suitable for internal resolution.

■ The Tribe does not dispute it failed to pursue administrative procedures in this case. Rather, it contends administrative remedies were non-existent or the pursuit of them would have been an exercise in futility because the ten-day period within which to request a hearing concerning the grant officer's final determination or dismissal of a complaint under 20 C.F.R. § 676.88(f) had expired by the time this dispute arose. While it may be true that

the time had elapsed for requesting a hearing on the grant officer's final determination of the amount of disallowed funds, this dispute does not concern the grant officer's final determination concerning the audit results, which were accepted by the Tribe. The dispute in this case arose when the parties later disagreed as to the DOL's modification of the Tribe's 1982 Annual Plan and the withholding of subsequent CETA funds from the Tribe. Upon receipt of DOL's letter demanding modification of the 1982 Annual Plan prior to the approval of the summer youth funds, the Tribe should have filed a formal complaint as required by C.F.R. § 676.86.[3] The filing of a formal complaint would have triggered the investigatory procedure which is designed to allow for the internal correction of abuses under the Act. Contrary to the Tribe's assertions, DOL's letter to the Tribe stating that it considered the Tribe's request for a hearing barred as "untimely under the provisions of 20 C.F.R. 676.88(f)" does not excuse the Tribe's failure to pursue administrative procedures since the same letter noted that the Tribe was "free to pursue" its administrative remedies under subpart F of the Regulations, a copy of which was furnished to the Tribe by DOL.

■ The Tribe also argues this case constitutes a non-CETA dispute and pursuant to 20 C.F.R. § 678.81(c) it could institute this civil action in district court without first exhausting the CETA administrative process.[4] We disagree. Although § 676.-81(c) provides for non-administrative remedies when one believes that a recipient or subrecipient has engaged in conduct that violates both the Act and a federal or state constitution or law, that provision does not excuse the exhaustion of administrative remedies in this case where DOL's actions are in question. The paragraph relied on by the Tribe also provides:

> Nothing in the Act, this paragraph, nor any other provision in Parts 675–695 of this chapter shall:
>
> (1) Allow any person or organization to join or sue the Secretary with respect to his or her responsibilities under CETA except after exhausing [sic] the remedies in this subpart.

Section 676.81(c)(1).

Clearly, this suit is "with respect to the Secretary's responsibilities under CETA." The Tribe's complaint alleges that DOL has breached the Agreement providing for the repayment of misspent CETA funds "by demanding that the Tribe forfeit an additional $53,534.69 from its current CETA funding...." The Tribe also alleges that DOL has "improperly coerced the Tribe into double repayment" of its debt by refusing to authorize funds for youth programs under Title IVA and IVC of the Act unless the Tribe agreed to the reduction of its 1982 Annual Plan.

The Secretary is authorized to conduct audits to assure that funds provided under the Act are expended in a manner consistent with the Act and implementing regulations. 29 U.S.C. § 816(j). Moreover, the Act provides the Secretary with a variety of remedies for the misapplication of funds, including ordering the repayment of misspent funds from sources other than funds under this chapter and the withholding of

---

**3.** Obviously, the Tribe as prime sponsor would not be subject to the local grievance procedures specified at § 676.83 or § 676.84.

**4.** Section 676.81(c) provides:

(c) *Non-CETA remedies.* Whenever any person organization or agency believes that a recipient or subrecipient has engaged in conduct that violates the Act and that such conduct also violates the Federal or a State constitution, a Federal statute other than CETA, or a State or local law, that person, organization or agency may, with respect to the non-

CETA cause of action, institute a civil action or pursue other remedies authorized under other Federal, State, or local law against the recipient or subrecipient without first exhausting the remedies in this subpart. For example, if a subrecipient believes that a prime sponsor has breached the subgrant agreement between the prime sponsor and itself, the subrecipient may institute a civil action for breach of contract in a State court if so authorized by State law.

future funding, if prior notice and an opportunity for a hearing have been given to the recipient. 29 U.S.C. § 816(d)(1). Thus, this dispute arising out of the Secretary's alleged misconduct in fulfilling his responsibilities under CETA to recover misspent funds should be resolved administratively with judicial review available exclusively in the Fourth Circuit Court of Appeals.

Finally, the Tribe argues the district court had jurisdiction of this case despite the judicial review procedures established by CETA because its claims are of a constitutional dimension. See *Hark v. Dragon*, 611 F.2d 11, 13–14 (2d Cir.1979). The Tribe's complaint alleges that "the action of DOL has resulted in a denial of due process and equal protection of the law to the Tribe," and that in reliance upon the Stipulation Agreement the Tribe waived its right to a hearing and a meritorious defense, i.e., that the debt incurred under the 1973 Act is not enforceable because the 1973 Act made no provision for debt collection.

■ Where a substantial federal question is presented by the complaint in question, a district court has jurisdiction over the action and may exercise pendent jurisdiction over the remaining claims. *Hagans v. Lavine*, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974). Thus, a complaint alleging constitutional violations should be dismissed for lack of subject matter jurisdiction only where the constitutional allegations are wholly insubstantial or without merit, or foreclosed by prior cases which have settled the question. *Hagans v. Lavine*, 415 U.S. at 536–37, 94 S.Ct. at 1378–79. In the instant case the Tribe's claims that DOL's actions denied the Tribe due process and equal protection of the laws by forcing the Tribe to waive its right to assert the "meritorious" defense that the debt is unenforceable under the 1973 Act, have been foreclosed by prior case law which has settled the issue in this Circuit. In *N.C. Commission of Indian Affairs v.*

*Dept. of Labor*, 725 F.2d 238 (4th Cir.1984), we held that the Secretary's authority to require repayment of improper expenditures existed under the 1973 CETA Act. Clearly, then, even if DOL's actions resulted in the Tribe's waiver of the defense that the funds were uncollectable under the 1973 Act, DOL's actions did not amount to a constitutional deprivation because such a defense has been adjudged to be without merit in this Circuit. Since the Tribe's allegations of constitutional violations do not merit meaningful consideration, the district court was without jurisdiction to entertain them.

■ Thus, no matter how this matter is presented, it is no more than a dispute alleging misconduct under CETA over which the district court had no jurisdiction. Congress has determined that after administrative procedures have been exhausted in such cases the only appeal is to the Circuit Court, and in light of Congress' expressly providing for such an elaborate scheme for remedies and review a court "should not be anxious to allow a circumvention of that process absent extraordinary circumstances." *Consortium of Community-Based Organizations v. Donovan*, 530 F.Supp. at 531 (citing *Whitney National Bank v. Bank of New Orleans*, 379 U.S. 411, 419–23, 85 S.Ct. 551, 556–59, 13 L.Ed.2d 386 (1965)). Such extraordinary circumstances do not exist in this case.

AFFIRMED.