Janet BLACK, Plaintiff–Appellant,

v.

BROWARD EMPLOYMENT AND TRAINING ADMINISTRATION, a Florida interlocal agreement entity f/k/a Broward Manpower Counsel, City of Hollywood, City of Ft. Lauderdale, County of Broward, a political subdivision of Florida, Defendants–Appellees.

No. 87–5453.

United States Court of Appeals, Eleventh Circuit.

June 10, 1988.

David M. Lipman, Lipman & Weisberg, Robert E. Weisberg, Stefan Ruud, Miami, Fla., for plaintiff-appellant.

Susan F. Delegal, Fort Lauderdale, Fla., for defendants-appellees.

Rochelle J. Daniels, Fort Lauderdale, Fla., for Broward Employment & Training; Broward County.

Saul Smolar, Asst. City Atty., James T. Schoenbrod, Hollywood, Fla., for City of Hollywood.

Lindsey A. Payne, Asst. City Atty., Fort Lauderdale, Fla., for City of Fort Lauderdale.

Before VANCE and ANDERSON, Circuit Judges, and BROWN *, Senior Circuit Judge.

ANDERSON, Circuit Judge:

The issue in this case is whether the plaintiff's pursuit of administrative remedies operated to toll the running of the statute of limitations in her subsequent 42 U.S.C. § 1983 action. Because we find that it did not, we affirm the district court's dismissal on grounds that the statute of limitations had run. *Black v. Broward Employment and Training Administration*, 659 F.Supp. 659 (S.D.Fla.1987).

Defendant Broward Employment and Training Administration ("BETA")[1] em-

---

* Honorable John R. Brown, Senior U.S. Circuit Judge for the Fifth Circuit, sitting by designation.

1. BETA was a consortium organized pursuant to the Florida Interlocal Cooperative Act of 1969, Fla.Stat. § 163.01, to administer grants under the Comprehensive Employment and Training Act of 1973, Pub.L. No. 93–203, 87 Stat. 839 (1973), as amended by the Comprehensive Employment and Training Act Amendments of 1978, Pub.L. No. 95–524, 92 Stat. 1909 (1978) ("CETA"). CETA provided federal grants to prime sponsors, usually state and local governments, to provide temporary jobs to low income people. The Job Training Partnership Act, Pub. L. No. 97–300, § 184(a)(1), 96 Stat. 1322, 1357 (1982) repealed CETA effective October 13, 1982. Because the issues on this appeal are the same with respect to all defendants, we refer to them collectively as BETA throughout this opinion.

ployed Janet Black as a temporary personnel officer from September 1975 until she was fired on May 26, 1977. Black claimed that when BETA fired her, it discriminated against her on the basis of sex and violated her procedural due process rights. She began pursuing her administrative remedies with the Department of Labor under CETA on December 20, 1978.[2] That action continued until the Undersecretary of Labor issued a final decision on May 10, 1985. On October 25, 1983, Black filed a *pro se* Title VII complaint alleging sex discrimination. On October 16, 1986, the district court granted her leave to amend her complaint to add sex discrimination and procedural due process claims under 42 U.S.C. § 1983.

The district court dismissed the § 1983 claims as time-barred on April 28, 1987. 659 F.Supp. 659. Subsequently, Black voluntarily dismissed her Title VII claim in order to gain an immediate appeal of her § 1983 claims.[3] Thus, the Title VII claim is not at issue here.[4]

The parties agree that Black's cause of action accrued on May 26, 1977. They also agree that Florida's four-year statute of limitations for statutory liability actions applies. Fla.Stat. § 95.11(3)(f). *See Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). The parties disagree as to whether certain events tolled the running of the statute.[5]

Black argues that the law of the Southern District of Florida and the Fifth Circuit was either unclear or required exhaustion of administrative remedies prior to bringing a § 1983 suit during much of the limitations period in which she might have filed suit. Because she was pursuing her administrative remedies during those times,

she argues that the running of the statute should have been tolled accordingly.

Black bases her claim on the lower court decisions leading to the Supreme Court's decision in *Patsy v. Board of Regents*, 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982). The *Patsy* case, like this one, arose in the Southern District of Florida. In *Patsy*, the district judge dismissed the plaintiff's case for failure to exhaust state administrative remedies on July 9, 1979. A panel of the Fifth Circuit reversed on February 28, 1980 holding that exhaustion was not a prerequisite to a § 1983 suit. *Patsy v. Florida International University*, 612 F.2d 946 (5th Cir.1980). The Fifth Circuit granted rehearing en banc on May 5, 1980. *Patsy v. Florida International University*, 617 F.2d 442 (5th Cir.1980) (en banc). On January 22, 1981, the en banc court required a case-by-case analysis to determine whether exhaustion of administrative remedies was a prerequisite to § 1983 suits. *Patsy v. Florida International University*, 634 F.2d 900 (5th Cir.1981) (en banc). However, the en banc decision was reversed by the Supreme Court on June 21, 1982. 457 U.S. 496, 102 S.Ct. 2557. The Supreme Court held that a plaintiff need not exhaust state administrative remedies before bringing a § 1983 suit.

Black's argument is inapposite. *Patsy* dealt with *state* administrative remedies. Black's administrative remedies were federal. The Supreme Court decision in *Patsy* is instructive, however. The court first held "whether exhaustion is required [prior to bringing a § 1983 suit] should be answered by reference to congressional intent...." 457 U.S. at 501, 102 S.Ct. at 2560. The court then held that Congress did not intend to require exhaustion of

---

**2.** *See* CETA Amendments of 1978, § 106, 92 Stat. 1926–29. Because CETA has been repealed, all citations are to the Act itself rather than the U.S.Code.

**3.** *See Studstill v. Borg Warner Leasing*, 806 F.2d 1005 (11th Cir.1986) (when pendent state law claims were dismissed, plaintiff had to voluntarily dismiss pending Title VII claim in order to gain immediate appeal of dismissal of state law claims).

**4.** In connection with her Title VII claim, Black also pursued administrative remedies before the Equal Employment Opportunity Commission. Black has not argued that pursuit of these remedies affected the running of the statute of limitations, and therefore we ignore the EEOC remedy in our subsequent discussion.

**5.** The parties also disagree as to whether the 1986 amendment of the complaint relates back to the 1983 filing. We assume, without deciding, that it does.

state administrative remedies in the § 1983 context.

The court specifically addressed exhaustion of federal administrative remedies in a footnote:

> Congressional intent is important in determining the application of the exhaustion doctrine to cases in which federal administrative remedies are available, as well as to those in which state remedies are available.... In determining whether exhaustion of federal administrative remedies is required, courts generally focus on the role Congress has assigned to the relevant federal agency, and tailor the exhaustion rule to fit the particular administrative scheme created by Congress. *See McKart v. United States,* 395 U.S. 185, 193–195, 89 S.Ct. 1657, 1662–1663, 23 L.Ed.2d 194 (1969)....

457 U.S. at 502 n. 4, 102 S.Ct. at 2560 n. 4. Thus, we must look to the statute prescribing the administrative remedy at issue here.[6]

Fortunately, the congressional intent as to this issue is quite clear. Section 106 of the CETA Amendments of 1978 required prime sponsors, like BETA, to establish local grievance procedures. 92 Stat. 1909, 1926–29. These local procedures were appealable to the Department of Labor. Black followed this procedure.

In addition to setting up the administrative remedy, § 106 also provided:

> The existence of remedies under this section shall not preclude any person, who alleges that an action of a prime sponsor or of any other recipient violates any of the provisions of the Act or the regulations promulgated under the Act, from instituting a civil action or pursuing any other remedies authorized under Federal, State, or local law.

CETA Amendments of 1978, § 106(*l*). This section clearly states the congressional intention that no exhaustion requirement should apply to this administrative remedy.

The Department of Labor's regulations implementing § 106 make explicit reference to the exhaustion doctrine. The applicable regulation provided:

> (c) *Non–CETA remedies.* Whenever any person, organization or agency believes that a recipient or subrecipient has engaged in conduct that violates the Act and that such conduct also violates the Federal or a State constitution, a Federal statute other than CETA, or a State or local law, that person, organization or agency may, with respect to the non-CETA cause of action, institute a civil action or pursue other remedies authorized under other Federal, State, or local law against the recipient or subrecipient without first exhausting the remedies in this subpart....

20 C.F.R. § 676.81(c). A second regulation also made the point:

> (6) In any case where the alleged violation of the Act or regulations is also an alleged violation of another law, regulation or agreement, nothing in this section shall preclude an individual from filing a complaint or grievance under such other law or agreement with respect to the non-CETA cause of action, as well as filing a complaint under CETA.

20 C.F.R. § 676.83(6).[7] When the action is based upon the federal Constitution or a

---

6. Black makes no claim that the statute was tolled prior to the start of administrative proceedings on December 20, 1978. Thus, we need only concern ourselves with the CETA Amendments of 1978 which went into effect on October 27, 1978. *See* footnote 1, *supra.*

7. Both of these regulations were promulgated on April 3, 1979. 44 Fed.Reg. 19990 (1979). They do narrow the scope of the broad language of the statute to require exhaustion for any claim grounded solely on a violation of CETA. The Department of Labor thought that to interpret the language more broadly would make the administrative remedy superfluous. 44 Fed.

Reg. at 19994 (1979). Of course, the claims in this case are based on the Constitution and § 1983 and not on CETA. Thus, exhaustion of administrative remedies is not required.

We note that courts have had considerable difficulty with the CETA/non-CETA distinction. *See Eastern Band of Cherokee Indians v. Donovan,* 739 F.2d 153, 158 (4th Cir.1984) (recognizing the CETA/non-CETA distinction, but requiring exhaustion under 20 C.F.R. § 676.81(c)(1) because the complaint went to the Secretary's responsibilities under CETA); *CETA Workers' Organizing Committee v. City of New York,* 617 F.2d 926, 935–36 (2d Cir.1980) (holding that federal district court did not have jurisdiction

federal statute other than CETA, as in this case, it is plain that there is no exhaustion requirement under this administrative scheme.[8] *Accord Consortium of Community Based Organizations v. Donovan,* 530 F.Supp. 520, 539 (E.D.Cal.1982);[9] *Hark v. Dragon,* 477 F.Supp. 308, 312 (D.Vt.), *aff'd on other grounds,* 611 F.2d 11 (2d Cir.1979).[10]

Because the congressional intent not to require exhaustion in this case was at all times clear, there was no tolling of the statute of limitations. Therefore, the judgment of the district court dismissing Black's § 1983 claims as time-barred is

AFFIRMED.

under the Administrative Procedure Act to hear a cause of action based on CETA; plaintiffs could only obtain judicial review by exhausting their administrative remedy under § 106 and then seeking judicial review under § 107). Some of the language in *CETA Workers'* implies that exhaustion would be required in any case challenging a recipient's actions. However, only CETA violations were involved in that case, and thus any statement as to non-CETA causes of action must be taken as dicta. *See also Uniformed Firefighters Association v. City of New York,* 676 F.2d 20, 22–23 (2d Cir.1982) (holding that violations of CETA did not rise to the level necessary to state a cause of action for violation of a federal statute under § 1983).

**8.** These regulations remained in effect at all relevant times. *See* 1980–1984 C.F.R. To avoid any confusion, we note that § 676 was inadvertently omitted from the 1981 C.F.R. However, the section remained in effect. 45 Fed.Reg. 33846 (1980); 47 Fed.Reg. 15988 (1982).

**9.** The *Consortium* case reached a different result from *Uniformed Firefighters, supra,* on the issue of whether a violation of CETA could rise to the level necessary to state a cause of action under § 1983 as a violation of a federal statute. However, the important point for purposes of this case is that once the *Consortium* court found a non-CETA cause of action under § 1983 against the state defendants, it found that § 106(*l*) allowed the plaintiff to bring suit without exhausting administrative remedies. As to the federal defendants, the *Consortium* court found that the plaintiffs did not state a non-CETA cause of action, and therefore it required exhaustion as to those defendants. In this case, Black's causes of action are clearly non-CETA causes of action. *See* footnote 7, *supra.*

**10.** The Second Circuit found that exhaustion would have been futile in the *Hark* case. Therefore, it specifically did not reach the district court's conclusion that § 106(*l*) did not require exhaustion. 611 F.2d at 14 n. 4.

*Uniformed Firefighters, supra,* can also be read to support our position. After deciding that the plaintiffs' claims for violations of CETA did not state a cause of action under § 1983, the court went on to address the plaintiffs' equal protection claim on the merits. The court held that the plaintiffs did not state an equal protection cause of action, but it did not mention exhaustion. Thus, although the issue was not expressly addressed, the case can be read to mean that exhaustion was not required on the constitutional claim.

Black also cites the decisions in *Adams v. City of Chicago,* 491 F.Supp. 1257 (N.D.Ill.1980), and *Serghini v. City of Richmond,* 426 F.Supp. 326 (E.D.Va.1977). Both *Adams* and *Serghini* held that the plaintiff must exhaust administrative remedies under CETA before bringing suit in federal court. *Adams* is unpersuasive because it makes no mention of § 106(*l*) or its implementing regulations. *Serghini* is inapposite because it concerned the 1973 Act rather than the 1978 Amendments which are at issue here.

The case law on this question is sparse and somewhat confusing. However, no court, other than *Adams* (explained immediately above), has squarely held that exhaustion is required when, as in this case, the plaintiff bases her claim on CETA *and* the federal constitution or a federal statute. Although the case law is limited, the proper resolution of this case is readily apparent because the statute itself and the regulations clearly provide that exhaustion of administrative remedies is not required.